*1255 HENRY, Circuit Judge.
Petitioners Reyes Alvarez-Delmuro and Soledad Alvare^-Colazo, husband and wife, are natives and citizens of Mexico who face removal from this country. They seek review of the decision of the Immigration Judge (IJ) that they are not eligible for cancellation of removal. The Board of Immigration Appeals (BIA) affirmed, without opinion, the decision of the IJ, making the IJ’s decision the final agency determination. See 8 C.F.R. § 1003.1(e)(4). Respondent asserts that 8 U.S.C. § 1252(a)(2)(B) deprives this Court of jurisdiction to review the IJ’s determination. In keeping with our recent decision in Morales Ventura v. Ashcroft, 348 F.3d 1259 (10th Cir.2003), we agree.
I. Background
The Alvarezes concede that they entered the United States together without inspection on January 8, 1986, making them subject to removal. In removal proceedings, the Alvarezes applied for relief under 8 U.S.C. § 1229b(b)(l), which permits the Attorney General to cancel removal of an inadmissable or deportable alien who
(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
(B) has been a person of good moral character during such period;
(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(8) of this title (except in a case described in section 1227(a)(7) of this title where the Attorney General exercises discretion to grant a waiver); and
(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien’s spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.
8 U.S.C. § 1229b(b)(l). The IJ determined that the Alvarezes satisfied subpar-agraphs (A), (B), and (C), but that they did not satisfy subparagraph (D).
The Alvarezes claimed that they met the requirements of subparagraph (D) because their removal would result in “exceptional and extremely unusual hardship” to their four children who are United States citizens by virtue of their birth in this country. The children range in age from four to thirteen. The Alvarezes assert that if they take the children back to Mexico with them, the children would be forced to endure an educational system and a standard of living considerably worse than in the United States. In addition, the Alvarezes do not believe that they could adequately support their children in Mexico. Alternatively, if the Alvarezes were to leave their children in the United States with relatives, the children would suffer from being separated from their parents.
The IJ found that if the Alvarezes returned to Mexico,
their standard of living will change considerably. ... [Rjeports on Mexico stat[e] that 40 percent of the population of Mexico is children under 18, and that there are nutritional problems and educational problems. There are children living on the street who are exploited. Certainly life is very difficult for children without parents, and for children with parents the standard of living is very poor.
Rec. at 80. However, the IJ also found that the Alvarezes’ case did not satisfy the exceptional and extremely unusual hardship standard because “when Congress passed the legislation concerning cancellation of removal, in the committee reports they noted that they did not want cancellation of removal to be granted simply because families would suffer a worse type of *1256 life in another country, an inferior life to that of the United States.” Id. The IJ concluded by stating,
Frankly, I believe the hardship would be extreme hardship under the old standard, which would warrant granting the case, but I don’t believe the case can be called exceptional, nor extremely unusual. It is a type of hardship that is felt by every family returning to Mexico, except perhaps the very wealthy.
Id. at 80-81. The Alvarezes appealed to the BIA, which affirmed, without opinion, the IJ’s determination.
On appeal, the Alvarezes argue that the BIA violated the U.S. Constitution because the BIA’s “interpretation of the ‘exceptional and extremely unusual hardship’ standard ... applies a discriminatory alienage classification in violation of the Due Process Clause of the Fifth Amendment.” Pet. Br. at 10. Specifically, they assert that the BIA improperly uses undocumented aliens as the “baseline/normative comparison class” in evaluating the hardship to an alien’s U.S. citizen relatives, rather than the proper baseline comparison class of similarly situated U.S. citizens. Pet. Reply Br. at 7. The Alvarezes also argue that the IJ violated the Fifth Amendment rights of the Alvarez children “when he classified them on the basis of their parent’s [sic] alienage and national origin, and equated them with Mexican children in general, and aliens from Mexico in particular.” Id. at 25. The Alva-rezes point to the remark of the IJ that the hardship to the Alvarez children is “a type of hardship that is felt by every family returning to Mexico.” Rec. at 81. They contend that this demonstrates that the IJ unconstitutionally evaluated the rights of the Avarez children on the basis of the Mexican citizenship and national origin of their parents rather than their own U.S. citizenship and national origin. Pet. Br. at 25.
As Respondent points out, the threshold issue is whether we have jurisdiction to review the BIA’s denial of the Avarezes’ application for cancellation of removal. See Morales Ventura, 348 F.3d at 1261. While the Avarezes’ case was pending on appeal, we answered that question in the negative in Morales Ventura, a case presenting facts and a constitutional claim nearly identical to the Avarezes’ case. See id. at 1261. In Morales Ventura, we held that because such a claim did not present a “substantial constitutional issue,” 8 U.S.C. § 1252(a)(2)(B)® divests this court of jurisdiction. Id. at 1262 (citing Gonzalez-Oropeza v. U.S. Attorney General, 321 F.3d 1331, 1333 (11th Cir.2003) (per curiam)). Section 1252(a)(2)(B) states
(2) Matters not subject to judicial review
(B) Denials of discretionary relief Notwithstanding any other provision of law, no court shall have jurisdiction to review—
(i) any judgment regarding the granting of relief under section 1182(h), 1182®, 1229b, 1229c, or 1255 of this title, or
(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.
8 U.S.C. § 1252(a)(2)(B) (emphasis added). We observed that although the constitutional claim was “predicated on the status of [the petitioners’] children as United States citizens .... ‘[t]his Court has repeatedly held that the incidental impact visited upon the [citizen] children of de-portable, illegal aliens does not raise con *1257 stitutional problems.’ ” Id. at 1262 (quoting Delgado v. INS, 637 F.2d 762, 764 (10th Cir.1980)). Therefore, under the reasoning of Morales Ventura, we must dismiss the Alvarezes’ appeal for lack of jurisdiction. However, we note, as we did in Morales Ventura, that “we leave open whether constitutional concerns might require us to construe § 1252(a)(2)(B)® to permit review in some circumstances.” Id. (citing Calcano Martinez v. INS, 533 U.S. 348, 350 n. 2, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001)); see also Ramirez-Perez v. Ashcroft, 336 F.3d 1001, 1004 (9th Cir.2003) (“Although we lack jurisdiction to review whether an alien has established exceptional and extremely unusual hardship, we retain jurisdiction to consider whether the BIA’s interpretation of the hardship standard violates due process.”). As in Morales Ventura, the Alvarezes’ constitutional claims are “predicated on the status of their children as United States citizens,” and such claims do not present “substantial constitutional issue[s]” that might permit review. Morales Ventura, 348 F.3d at 1262.
Accordingly, we dismiss the petition for lack of jurisdiction.